# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**SHAKERA B. SHAMS, IMRAN SHAMS,**

**Plaintiffs,**

**-vs-** **Case No. 6:06-cv-621-Orl-28DAB**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**

**Defendant.**

---

## ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION TO COMPEL DISCOVERY (Doc. No. 13)** |
| **FILED:** | **December 14, 2006** |

**THEREON** it is **ORDERED** that the motion is **GRANTED**.

Following entry of a $2.2 million judgment entered against them, Plaintiffs sued their insurer for bad faith handling of the underlying automobile accident claim, pursuant to Florida Statute § 624.155, and for breach of contract. Doc. No. 2. Shakera Shams was involved in an automobile accident on November 17, 2003, which resulted in the death of Rolando Moreno. State Farm offered to settle the claim against Plaintiffs in exchange for the policy limits on January 29, 2004. The Moreno Estate filed suit on January 30, 2004 against Plaintiffs; Plaintiffs allege that State Farm handled in bad faith the wrongful death claim brought against them by failing to settle the claim.

This suit was originally filed in state court on March 31, 2006, and State Farm removed it to this forum on May 9, 2006, based on diversity jurisdiction. Doc. No. 1. On May 23, 2006, Plaintiffs propounded a Request to Produce documents (Doc. No. 13-2), and State Farm responded, asserting numerous objections, based on the work-product doctrine and attorney-client privilege. Doc. No. 13-3. In conjunction with its objections, State Farm tendered a nine-page privilege log. Doc. No. 13-4. Plaintiffs filed the instant Motion to Compel on December 14, 2006 and State Farm, after several extensions, responded on January 12, 2007. Doc. No. 18.

At the crux of the parties disagreement is the Florida Supreme Court's opinion in *Allstate Indemnity Company v. Ruiz,* 899 So. 2d. 1121 (Fla. 2005), which held that all materials in claim and litigation files were discoverable in bad-faith actions brought pursuant to Florida law. Plaintiffs' Motion to Compel asserts that *Ruiz* controls here and seeks production of materials from the file up until the time of judgment in the underlying case, *i.e.*, August 16, 2005. State Farm has responded (Doc. No. 18) by asserting that *Ruiz* does not apply in federal courts or to a third-party action; and even if *Ruiz* did apply, the items sought were generated in anticipation of the bad-faith claim, a claim State Farm contends it expected on January 30, 2004, after the victim's lawyer rejected its settlement offer for the policy limits.

The Court finds that *Ruiz* does apply here, but finds that State Farm must be given an opportunity to tender an amended privilege log with respect to documents which relate solely to the present litigation (and not the underlying coverage claim and litigation). Once the list is tendered, the parties are to confer and if a good faith conference does not result in an agreement, the motion can be renewed with respect to items in dispute. In the meantime, all items pertaining to the underlying

coverage dispute and litigation through the date of the final judgment in the underlying case shall be produced to Plaintiffs within 11 days of this Order.

## *ANALYSIS*

Plaintiffs seek discovery of their insurer's claim, underwriting and investigative files, correspondence, and documents evidencing bad faith notices filed against them up to and including the date of the Final Judgment in the underlying case brought by the Moreno Estate, August 16, 2005. In response, State Farm agreed to produce non-privileged documents from before January 29, 2004, but has objected to producing documents generated after that date, contending that the work-product privilege in the anticipated bad-faith case protects these documents from the time after it became clear (to State Farm) in January 2004 that bad-faith litigation was likely because the Moreno Estate intended to file suit. Plaintiffs do not seek any documentation or communications between State Farm and its counsel relating to the instant bad faith suit, either during the suit or post Final Judgment. State Farm tendered a nine-page privilege log which includes approximately one hundred entries. Doc. No. 13-4.

In what appears to be a futile and ill-advised effort to re-litigate one of the precise issues already decided against it in a prior case, State Farm contends that it need not produce its complete file because the Florida *Ruiz* case and its progeny do not apply in this federal litigation. State Farm argued precisely the same point in *Cozort v. State Farm Mutual Automobile Ins. Co.*, 233 F.R.D. 674, 676 (M.D. Fla. 2005) (Baker, J.), was squarely overruled, and was ordered to produce its claims file with a revised privilege log. Without citation to any intervening case law that might modify the *Cozort* decision, this argument is frivolous.

State Farm contends – again – that despite the clear and unequivocal language used by the Florida Supreme Court, *Ruiz* is inapplicable in federal court and does not apply to attorney-client privilege protected documents. State Farm also seeks to create a distinction between first-party bad faith actions and third-party suits. The Court was unpersuaded in *Cozort* and remains unpersuaded.

In *Ruiz,* the Florida Supreme Court squarely addressed the discoverability of materials in claim and litigation files in the context of bad faith actions under Florida law. The court traced the history of bad faith actions in Florida, and the outgrowth of discovery disputes in this unique situation where the fiduciary is the adversary. Recognizing that "the claim file type material presents virtually the only source of direct evidence with regard to the essential issue of the insurance company's handling of the insured's claim," the court ordered it disclosed. *Ruiz*, 899 So.2d at 1128-29 (citing *Fidelity & Casualty Insurance Co. of New York v. Taylor,* 525 So. 2d 908, 909-10 (Fla. 3rd DCA 1987) (the "pertinent issue is the manner in which the company has handled the suit including its consideration of the advice of counsel so as to discharge its mandated duty of good faith. Virtually the only source of information on these questions is the claim file itself. Accordingly . . . it has been consistently held in our state that a claim file is subject to production in such an action.")). *Cozort*, 233 F.R.D. at 675.

This Court previously quoted *Ruiz* as clarifying the law:

> Consistent with the analysis outlined, we hold that in connection with evaluating the obligation to process claims in good faith under section 624.155, all materials, including documents, memoranda, and letters, contained in the underlying claim and related litigation file material that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability, or damages, should also be produced in a first-party bad faith action. Further, all such materials prepared after the resolution of the underlying disputed matter and initiation of the bad faith action may be subject to production upon a showing of good cause or pursuant to an order of the court following an in-camera inspection.

*Ruiz*, 899 So.2d at 1130. The Florida Supreme Court has thus held that the nature of the underlying cause of action mandates that the *entire* claim file is discoverable in a bad faith action brought in state court. After *Ruiz*, it is clear that Florida recognizes no privileges or limitation with respect to claim file materials in such an action.

State Farm cites to the pre-*Ruiz* seventeen year old holding in the Middle District case of *Auto Owners Ins. Co. v. Total Tape, Inc.*, 135 F.R.D. 199, 201 (M.D. Fla. 1990), that federal law provides the decisional framework with respect to the work product doctrine and thus, "Ruiz is not binding on the issue of whether work product documents are discoverable in the bad faith claim." This *pre-Ruiz* opinion is not dispositive of the issue here. As was already spelled out in *Cozort*, the work product at issue in the underlying coverage litigation was created with respect to the then-pending *state* court case. 233 F.R.D. 676. "As the coverage litigation was initiated, litigated, and resolved solely in state court, Rule 26 of the Federal Rules of Civil Procedure does not apply to any work product relating to that litigation. Any work product protection that attaches to documents created in connection with state court proceedings must necessarily flow from state law. Here, that law is set forth in *Ruiz*. The documents must be produced." *Id*.

In *Cozort*, this Court alternatively held that federal law would also compel production:

> Even if federal law did control, the Court would reach the same result. Rule 26(b)(3), Federal Rules of Civil Procedure, provides that a party can obtain discovery of documents otherwise discoverable and prepared in anticipation of litigation or for trial by or for another party or representative (including an attorney) "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Thus, the immunity is qualified and, under the traditional Rule 26 analysis, the items

are discoverable upon a sufficient showing of substantial need and undue hardship. *See Hickman v. Taylor,* 67 S. Ct. 385, 329 U.S. 495, 91 L. Ed. 451 (1947). Such a showing is present here. The Court agrees with the Florida Supreme Court that, in the context of bad faith actions, the only evidence of the claim itself is the entire claim file, including the impressions and advice of counsel. This meets the substantial need and undue hardship tests, sufficient to require production over an assertion of work product immunity. Thus, even if Rule 26 did apply to the coverage action in state court, Plaintiff would still be entitled to production of the claim file and litigation files of the coverage action.

The Court is not unmindful of the distinction made between so-called "opinion" work product (that is, the mental impressions of the attorney) and other trial preparation work product materials (such as witness statements). While opinion work product is generally entitled to a higher degree of protection, such protection is not absolute and disclosure may be compelled in rare circumstances. *See, generally, Upjohn Co. v. United States,* 101 S. Ct. 677, 688, 449 U.S. 383, 401, 66 L. Ed. 2d 584 (1981); *Williamson v. Moore,* 221 F. 3d 1177, 1182 (11th Cir. 2000) ("While opinion work product enjoys almost absolute immunity, extraordinary circumstances may exist that justify a departure from this protection."). Federal courts have found the existence of such circumstances in the bad faith lawsuit context, where the information sought is directly at issue and the need for its production is compelling. *See Holmgren v. State Farm Mutual Ins. Co.*, 976 F. 2d 573, 577 (9th Cir. 1992) (bad faith insurance claim case–plaintiff allowed discovery of handwritten memoranda prepared by adjuster even though it qualified as opinion work product); *Hartman v. Banks,* 164 F.R.D. 167 (E.D. Pa. 1995) (action for intentional infliction of emotional distress relating to efforts to obtain allegedly inadequate settlement–claimant allowed opinion work product of insurer); *Reavis v. Metro. Property & Liability Ins. Co.*, 117 F.R.D. 160, 164-65 (S.D. Cal.1987) (same). For the reasons set forth by the Florida Supreme Court in *Ruiz,* this Court holds that the mental impressions of State Farm's counsel are directly at issue here, and thus, exceptional circumstances justify invading the opinion work product immunity pertaining to any such documents created as part of the coverage litigation.

With respect to assertions of attorney-client privilege, State Farm fares no better. Federal Rule of Evidence 501 provides, in pertinent part, that in civil actions where state law supplies the rule of decision, the privilege of a witness shall be determined in accordance with state law. As set forth by the Florida Supreme Court in *Ruiz,* state law recognizes no attorney-client privilege in the context of bad faith claims, with respect to coverage issues. The Florida court used broad language to clarify that "all materials" must be produced. "All materials" necessarily includes materials between the insurance company and its counsel regarding coverage issues. Thus, to the extent *Ruiz* implicates a claim of attorney-client privilege, *Ruiz* is applicable in this diversity suit under FRE 501. As such, Plaintiff is entitled to

> production of all claim file or litigation file materials pertaining to coverage issues, despite State Farm's assertion of attorney-client privilege.[1]

233 F.R.D. 677. *See also Nowak v. Lexington Ins. Co.*, __ F. Supp. 2d __, 2006 WL 3613623, *6 (S.D. Fla. March 16, 2006) (holding that defendant could not assert the attorney-client privilege with respect to documents and testimony which were relevant to the issue of whether Defendant acted in good faith, including the advice given by counsel as to the handling of the claim, the coverage determination, and litigation of the coverage dispute until its resolution).

Plaintiffs argue that an insurer such as State Farm cannot arbitrarily cut off production of discoverable information at a date when the insurer feels that the case no longer could have settled by hiding behind the shield of the work product privilege.

State Farm relies on the case of *United Service Automobile Association v. Jennings*, 731 So.2d 1258, 1260 (Fla. 1999) for the broad proposition that "work product prepared in anticipation of the bad faith claim is not discoverable in the bad faith claim." Doc. No. 18. Unfortunately the *Jennings* decision does not support State Farm's arbitrary curtailing of its production to an earlier date, and instead supports Plaintiffs' position that they are entitled to documents generated until the time of the underlying judgment, or August 16, 2005. The Florida Supreme Court concluded:

> We note that the permitted discovery of the insurer's claim file is limited to materials related to the insurer's handling of the claim through the date of the *stipulation and agreement that concluded the underlying negligence claim and is the basis of the stipulated judgment*. The required discovery does not include any attorney-client communication or work-product material which pertains to the insurer's defense of itself in the bad-faith action *and which was generated subsequent to the stipulation and agreement*, even though such privileged materials are physically included in what is referred to as the claims file.

[1]As this Court stated in *Cozort*, it is not swayed by State Farm's analysis regarding distinctions between first and third party bad faith suits. "Florida has now abolished 'artificial and disparate discovery rules" with respect to "first-and third-party bad faith actions.'" *Cozort*, 233 F.R.D. 677 n.3 (citing *Ruiz*, 899 So.2d at 1128-19).

*Id.* at 1260 (emphasis added).

To be clear, Plaintiffs are **not** seeking production of attorney-client privileged documents that relate to the instant bad faith litigation filed on March 31, 2006 or even those created *after* the underlying Moreno Estate litigation ended in final judgment on August 16, 2005. However, Plaintiffs do seek to compel documents that State Farm has withheld pre-dating August 16, 2005. State Farm stated in its Objections that the work product contained in its claim file subsequent to January 30, 2004 was "irrelevant to Plaintiff's bad faith claim, and to that extent Plaintiffs' request is not reasonably calculated to lead to discoverable evidence." State Farm contends that January 30, 2004 – not August 16, 2005 – should be the cut-off date for production of claim-file documents because State Farm anticipated Plaintiffs' bad faith suit when the Moreno Estate indicated on January 30, 2004 that it was rejecting State Farm's settlement offer. State Farm argues that "*Ruiz* does not stand for the proposition that the Plaintiffs are entitled to documents created in anticipation of the instant bad faith claim, simply because they may have been placed in the claim file." Doc. No. 18 at 13. To the contrary, *Ruiz* does stand for the proposition that Plaintiffs are entitled to **all** documents created before the final judgment in the underlying suit – without regard to whether the insurer has already anticipated the bad-faith litigation. Following behind many excess judgments is a bad faith litigation brought by the insureds or their assignees; in all of these cases, a prudent insurer "anticipates" a bad faith suit but cannot re-cast work-product from the underlying as suit as anticipated bad-faith documents. Applying State Farm's reasoning and proposed cut-off date of when it first anticipated bad-faith litigation – the day after the Moreno Estate filed suit – every insurer would argue that the insurer anticipated potential bad-faith litigation the instant the personal injury victim injured by the insured-tortfeasor filed suit.

On similar facts, another judge of this court applied *Ruiz* to a bad-faith litigation discovery dispute, rejected the insurer's argument that documents generated before the entry of the underlying state court judgment were work-product protected, and after *in camera* review granted the plaintiff's motion to compel. *Mendez v. Unitrin Direct Property and Casualty Ins. Co.*, Case No. 8:06cv563-T-24MAP (M.D. Fla. Dec. 8, 2006) (slip op.) (attached as Doc. No. 13-6). The information the insurer sought to protect in the *Mendez* case boiled down to information documenting the progress of the underlying claim through the litigation process and noting the expenses incurred. Doc. No. 13-6 at 5. Such information, Judge Pizzo held, went to the heart of the issue in the bad-faith case, *i.e.*, whether the insurer acted in good faith while handling the underlying claims; thus, they were highly relevant and subject to discovery. *Id*. at 5.

According to State Farm's Privilege Log[2] entries marked "Work Product (BF)," virtually all of the documents relate to the underlying case but were created between January 2004 and August 2005; thus, State Farm has marked these entries with "BF" as "in anticipation of this pending bad faith litigation, or contain[ing] communications discussing this pending bad faith litigation." Doc. No. 13-4 at 2 n. 1. As currently described, the majority of entries for the disputed documents (from January 2004 to August 2005) do not reflect such "bad-faith related" communications and are not protected by the work-product privilege, such as: "proposed communication to attorney about bodily injury limits"; "email re: need to contact attorney and reiterate offer"; lawsuit against insured; settlement and handling of case; history of handling process; evaluation of vehicle, settlement proposals; claim analysis reports; claim activity log entries, discussion of excess verdict; recording of excess judgment;

[2]The copy of the Privilege Log supplied by Plaintiffs as an exhibit is not dated. Doc. No. 13-4.

discussion of strategy of defense of underlying claim; transcript of recorded statement of Shakera Shams; and redundant copies.

The motion is **granted in part** to the extent that all work-product objections pertaining to any claim or coverage file or underlying claim litigation files for documents generated before August 16, 2005 are overruled and the documents shall be produced within 11 days of this Order.

The Motion to Compel is **denied in part without prejudice** with respect to documents that are attorney-client privileged or work-product relating solely to *this* bad-faith lawsuit subject to the tender of an amended privilege log whose entries clearly indicate such. Such documents should be clearly identified as post-August 16, 2005 work-product bad-faith litigation or bad-faith litigation attorney-client privileged documents on the amended privilege log, and described with sufficient specificity to allow for evaluation of the applicability of any such privilege or protection.

**DONE** and **ORDERED** in Orlando, Florida on February 12, 2007.

David A. Baker

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record